## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Agreement") is entered into by plaintiffs, Justin Muniz, Mohammed Belaabd, Nelson Quintanilla, Jose Dilone, and Victor Amaro individually and on behalf of the Settlement Class, as defined below, and defendant, RXO Last Mile, Inc., formerly known as XPO Last Mile, Inc. ("RXO LM"). This Agreement is subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and is made for the sole purpose of attempting to consummate settlement of this Action on a classwide basis subject to the following terms and conditions. As detailed below, in the event the Court does not enter an order granting final approval of the Settlement for any reason, this Agreement shall be void and shall be of no force or effect.

## I. DEFINITIONS

1. "Action" shall mean the civil action initially filed on July 17, 2018, in the Superior Court of the Commonwealth of Massachusetts, by Justin Muniz, Mohammed Belaabd, Nelson Quintanilla, Jose Dilone, and Victor Amaro against Defendant XPO Last Mile, Inc. (later renamed to RXO Last Mile, Inc.), which was removed to and is currently pending in the United States District Court for the District of Massachusetts under Case No. 4:18-cv-11905-MRG.

2. "Carrier" shall mean any person who contracted with RXO LM to provide delivery services (either individually or through a business entity), who personally made deliveries at least 80 percent of the days RXO LM assigned routes to him for at least three months and who averaged performing deliveries for RXO LM at least four days a week during that time span, who reported to a facility in Massachusetts more often than to a facility in any other state for at least four weeks during the class period OR who made at least 60% of his deliveries in Massachusetts for at least four weeks during the Class Period.

3. "Class Counsel" shall mean Lichten & Liss-Riordan, P.C. (Harold Lichten, Benjamin Weber, and Olena Savytska) 729 Boylston Street, Ste. 2000, Boston, MA 02116.

4. "Class Counsel Fees and Expenses" shall mean Class Counsel's attorney fees and expenses as set forth in Section III(7).

5. "Class Notice" shall mean the Notice of Proposed Class Action Settlement, as set forth in the form of Exhibit A attached hereto, or as otherwise approved by the Court, which is to be mailed to Settlement Class Members.

6. "Class Representatives" shall mean Plaintiffs Justin Muniz, Mohammed Belaabd, Nelson Quintanilla, Jose Dilone, and Victor Amaro.

7. "Class Period" shall mean the period of time from July 17, 2015, through the date the Court grants preliminary approval of the settlement and authorizes distribution of the Class Notice.

8. "Complaint" and "Operative Complaint" shall mean the Second Amended Class Action Complaint filed in the United States District Court for the District of Massachusetts on October 8, 2019, in this Action (Dkt. 43).

9. "Contract Week" shall mean each calendar week during the Class Period that a Carrier is identified as having provided delivery services for RXO LM.

10. "Court" shall mean the United States District Court for the District of Massachusetts.

11. "Cy Pres Amount" shall mean the aggregate amount of the checks distributed to Settlement Class Members that are not cashed within the time established in Section VI(8).

12. "Defendant" shall mean RXO Last Mile, Inc., which was formerly known as XPO Last Mile, Inc.

13. "Defendant Releasees" shall mean Defendant, Defense Counsel, and Defendant's present and former parent companies, subsidiaries, divisions, related or affiliated companies, successors, predecessors, related companies, and joint ventures, and each of their present and former owners, shareholders, officers, directors, employees, consultants, agents, attorneys, insurers, accountants, auditors, advisors, representatives, pension and welfare benefit plans, plan fiduciaries, administrators, trustees, general and limited partners, predecessors, successors and assigns, any individual or entity which could be jointly liable on behalf of the forgoing, and all other persons acting under the supervision, direction, control or on behalf of any of the foregoing.

14. "Defense Counsel" shall mean Jackson Lewis, P.C. (Douglas Hoffman, 75 Park Plaza, 4th Floor, Boston, MA 02116, Adam Lounsbury, *pro hac vice* and Paul Holdsworth, *pro hac vice,* 701 E. Byrd Street, 17th Floor, Richmond, VA 23219).

15. "Delivery Service Agreement" shall mean the agreement:

a. entered into between RXO Last Mile, Inc., XPO Last Mile, Inc., or 3PD, Inc., and a Carrier, either in his or her individual capacity or through a business entity, and

b. typically entitled Delivery Service Agreement in which the contractual terms regarding the Carrier's provision of delivery services were memorialized.

16. "Effective Date" shall be the date when all of the following events have occurred:

a. this Agreement has been executed by all Parties and by Class Counsel and Defense Counsel;

b. the Court preliminary approves this Agreement;

c. Class Notice has been given as provided in this Agreement;

d. the Court has held a final approval hearing and entered a final order and judgment certifying the Settlement Class and approving this Settlement; and

e. the later of the following events: the expiration of the period for filing any appeal, writ, or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; or the dismissal of any appeal, writ, or other appellate proceeding opposing the Settlement with no right to pursue further

remedies or relief; or any appeal, writ, or the issuance of such other final appellate order upholding the Court's final order with no right to pursue further remedies or relief.

17. "Final Approval Date" shall mean the date upon which the Court enters an order finally approving the fairness, reasonableness and adequacy of the Settlement.

18. "Individual Settlement Amount" shall mean the amount which is ultimately distributed to each Settlement Class Member pursuant to the distribution formula established by Section VI.

19. "Net Settlement Amount" shall mean the Settlement Fund less amounts allocated to Class Counsel Fees and Expenses, and Service Awards. The Net Settlement Amount shall be available for paying Individual Settlement Amounts to Settlement Class Members.

20. "Opt-Outs" shall mean any and all persons who timely and validly request exclusion from the Settlement Class in accordance with the terms of the Class Notice or as otherwise approved by the Court.

21. "Opt-Out Request" shall mean a timely and valid request for exclusion from the Settlement Class in accordance with the terms of the Class Notice or as otherwise approved by the Court.

22. "Parties" shall mean the Class Representatives and Defendant.

23. "Preliminary Approval Date" shall mean the date upon which the Court enters an order preliminarily approving this Settlement.

24. "Released Claims" shall mean the Release of Claims by Settlement Class Members and Release by Collective Action Opt-Ins, and Release of Claims by Class Representatives as described in Section IV herein.

25. "Service Award" shall mean any additional monetary payment provided to the Class Representatives for their efforts and risks taken on behalf of the Settlement Class in this Action as set forth below.

26. "Settlement" shall mean the settlement between the Parties, which is memorialized in this Settlement Agreement and Release of Claims, including any attached exhibits.

27. "Settlement Class" shall mean the Class Representatives and Carriers as defined herein. If any member of the Settlement Class provided delivery services in the name of a business entity, the business entity shall be considered one and the same as the individual person for all purposes of this Settlement. The Settlement Class does not include individuals who provided delivery services for a Carrier, and did not enter into a Delivery Service Agreement. Membership in the Settlement Class is limited to the Contract Weeks during the Class Period.

28. "Settlement Class Member" shall mean any person who is a member of the Settlement Class or if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor-in-interest. The Parties identified approximately 145 Settlement Class Members based on the data available to RXO LM at the time of the mediation.

29. "Settlement Fund" shall mean the gross amount of $2,900,000.00 which will be established as described below, and which represents full payment for the Released Claims, including Class Counsel Fees and Expenses, Service Awards, aggregate Individual Settlement Amounts, and any Cy Pres Amount.

30. "Settlement Class Member Information" shall mean, for each Settlement Class Member: (1) his or her name; (2) last known home address; (3) dates of service; (4) telephone number, if available; and (5) email address, if available.

31. "RXO LM" shall mean Defendant RXO Last Mile, Inc., formerly known as XPO Last Mile, Inc.

## II. BACKGROUND

1. Plaintiffs Justin Muniz, Mohammed Belaabd, Jose Dilone, Victor Amaro, and Nelson Quintanilla filed the instant case in July 2018, alleging that they were misclassified by RXO LM as independent contractors, and that the deductions taken by RXO LM from their pay violated the Massachusetts Wage Act, M.G.L. c. 149 § 148. Dkt. 1. The case was removed to federal court in September 2018. Id.

2. On January 14, 2022, Plaintiffs moved for class certification. Dkt. 113. The Court granted Plaintiffs' Motion for Class Certification in August 2022. Dkt. 147.

3. On December 20, 2022, Plaintiffs moved for partial summary judgment on the issue of RXO LM's liability as an employer under Massachusetts' ABC test. Dkt. 161. The Court granted Plaintiffs' motion for summary judgment on August 21, 2023. Dkt. 202.

4. On September 28, 2023, RXO moved for summary judgment, seeking a determination that Plaintiffs were not entitled to recover the deductions taken from their pay. Dkt. 205. The Court denied Defendant's motion on December 22, 2023, and denied Defendant's request for interlocutory review on February 16, 2024. Dkt. 219.

5. Defendant has denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action. Defendant contends that it complied in good faith with Massachusetts laws, properly classified the Class Representatives and Settlement Class Members under applicable state and federal law, and has dealt legally and fairly with Class Representatives and Settlement Class Members. Defendant further denies that, for any purpose other than settling this Action, these claims are appropriate for class or representative treatment. Nonetheless, Defendant has concluded that further proceedings in the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to dispose of burdensome and protracted litigation and to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action. Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex, longstanding cases such as the Action. Defendant has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement.

6. On May 17, 2024, the Parties participated in a full-day virtual mediation session with Hunter Hughes, Esq., a nationally recognized class action wage and hour mediator, with significant experience mediating cases alleging independent contractor misclassification. During this mediation, the Parties reached a settlement in principle.

7. Prior to the mediation, Plaintiffs' Counsel reviewed more than 500 pages of OpenForce settlement statements provided by RXO LM, reflecting adjustments to Plaintiffs' and class members' settlement payments; a spreadsheet of 9800 lines of additional deductions data for the class; as well as a spreadsheet consisting of 8,999,984 lines of data, reflecting the weeks worked by Plaintiffs and class members. Plaintiffs' counsel used this data to prepare a damages estimate for this case.

## III. SETTLEMENT CONSIDERATION

1. The Settlement Fund shall not exceed or be less than the aggregate sum of $2,900,000.00 (Two Million, Nine Hundred Thousand, and 00/100 dollars). The Settlement Fund shall constitute adequate consideration for the Agreement and will be funded in full and final settlement of: (a) the Released Claims, (b) the Class Counsel Fees and Expenses; (c) the Service Awards; (d) the aggregate of all Individual Settlement Amounts; (e) the *Cy Pres* Amount, if any; and (f) any other obligation of Defendant under this Agreement. Under no circumstances shall Defendant be required to pay more than the Settlement Fund for any reason whatsoever related to or under this Agreement.

2. This agreement is entered into expressly based on Defendant's representation that, as of the May 17, 2024 mediation, the available delivery data showed that 145 unique Carriers met the class definition and operated during the Class Period.

3. The Class Representatives may petition the Court to approve a Service Award to compensate each of them for their efforts on behalf of the Settlement Class in this Action, including assisting in the investigation, participating in discovery, and consulting with Class Counsel regarding all aspects of the litigation and settlement. The Service Awards shall not exceed $25,000.00 (twenty-five thousand and 00/100 dollars) for Justin Muniz and $20,000.00 (twenty thousand and 00/100 dollars) for each of the remaining Class Representatives, which amounts to $105,000.00 (one hundred and five thousand and 00/100 dollars) in the aggregate. Defendant shall not oppose any request by Class Representatives seeking Service Awards in such amounts. Any Service Award approved by the Court shall be paid to the Class Representatives from the Settlement Fund and shall be in addition to any distribution to which they may otherwise be entitled as Settlement Class Members. Such Service Award shall not be considered wages, and Class Counsel shall issue the Class Representatives a Form 1099 reflecting such payment. Each Class Representative shall be responsible for the payment of any and all taxes with respect to his Service Award and shall hold Defendant Releasees harmless from any and all liability with regard thereto.

4.   Each Settlement Class member shall be eligible to receive payment of the Individual Settlement Amount, which is a share of the Net Settlement Amount based on the distribution formula set forth in Section VI(5), below.

5.   Each Settlement Class Member, including the Class Representatives, shall be responsible for the payment of any and all taxes with respect to his or her Individual Settlement Amount, except for the Defendant's share of any applicable payroll taxes on amounts treated as wages under this Agreement. Defendant shall have no responsibility for deciding the validity of the Individual Settlement Amounts or any other payments made pursuant to this Settlement, shall have no involvement in or responsibility for the determination or payment of taxes and required withholdings, if any, and shall have no liability for any errors made with respect to the calculation of any Individual Settlement Amounts.

6.   Settlement Class Members represent and understand that they shall be solely responsible for any and all tax obligations associated with their respective Individual Settlement Amounts. All Individual Settlement Amounts shall be deemed to be paid to Settlement Class Members solely in the year in which such payments are actually received by the Settlement Class Members. It is the intent of this Agreement that the Individual Settlement Amounts are the sole payments to be made to the Settlement Class Members, and that the Settlement Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Individual Settlement Amount.

7.   As part of the motion for final approval of the Settlement, Class Counsel may submit an application for an award of Class Counsel Fees and Expenses not to exceed 33% of the Settlement Fund (or $996,666.67 (Nine Hundred Ninety-Six Thousand, Six Hundred Sixty-Six and 67/100 dollars)). Defendant agrees not to object to any such fee, cost or expense application in this amount. As a condition of this Agreement, Class Counsel has agreed to pursue fees and expenses in a manner consistent with this Section. Any Class Counsel Fees and Expenses awarded by the Court shall be paid from the Settlement Class Fund and shall not constitute payment to any Settlement Class Members. If Class Counsel fees are reduced by the Court and Class Counsel Fees and Expenses is less than set forth above, the amount of the reduction ordered by the Court will be added to the Settlement Fund and shall not revert to RXO LM.

8.   The Class Counsel Fees and Expenses approved by the Court shall encompass: (a) all work performed and costs and expenses incurred by, or at the direction of, any attorney purporting to represent the Settlement Class related to this Action; (b) all work to be performed and costs to be incurred in connection with approval of the Agreement; and (c) all work to be performed and costs and expenses, if any, incurred by Class Counsel in connection with administering the Settlement through the Effective Date.

## IV. RELEASES AND WAIVERS

1.   Upon the Effective Date, all Settlement Class Members shall fully, finally, irrevocably, unconditionally, and forever release, and discharge RXO LM and Defendant Releasees or any of them, from any and all claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Defendants and all Defendant Releasees that were or could have been asserted in the Operative Complaint, including, but not limited to, claims arising out of

6

or in any way connected with the work that each performed under the Delivery Service Agreement, any claim related to or arising from the employment classification of the Settlement Class Members, any claim under the Massachusetts Wage Act, M.G.L. c. 149 § 148, and related federal, state, municipal, or local laws or regulations accruing during the Class Period.

2.    The Class Representatives, on behalf of themselves, and any business entities through which they performed services on behalf of Defendant, and their heirs, executors, administrators, and representatives, shall and does hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which each may now have against Defendant arising out of or in any way connected with the work that each performed for RXO LM including, the Released Claims, claims that were asserted or could have been asserted in the Action, and any and all transactions, occurrences, or matters between the parties occurring prior to the Effective Date. Without limiting the generality of the foregoing, this release shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act, as amended; (b) Title VII of the Civil Rights Act of 1964, as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C. § 1981, as amended; (e) age discrimination claims under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act; (f) the Fair Labor Standards Act, as amended; (g) the Equal Pay Act; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act; (j) the Rehabilitation Act of 1973; (k) the Family and Medical Leave Act; (l) the Civil Rights Act of 1966; and (m) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws. This release is for any and all relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs, and the Class Representatives hereby forever release, discharge and agree to hold harmless the Defendant Releasees from any and all claims for attorney fees and costs arising out of the matters released in this Settlement.

## V. PROCEDURE FOR COURT APPROVAL AND RELATED NOTICES

1.    Class Counsel will submit this Agreement to the Court along with an uncontested Motion for Preliminary Approval of the Settlement to which the Parties have mutually agreed, and which shall include the proposed Class Notice to be sent to Settlement Class Members. Each party shall cooperate to present the Agreement to the Court for preliminary approval in a timely fashion.

2.    Class Counsel will submit to the Court an uncontested motion to preliminarily certify, for settlement purposes only, a Settlement Class of individuals who are each a Carrier, as that term is defined in Section I(2).

3.    Within twenty-one (21) days after the Preliminary Approval, Defendant will provide the Class Counsel with the Settlement Class Member Information. Defendant shall be entitled to provide password protected information on electronic media marked "Confidential – Attorney's Eyes Only." Within twenty-eight (28) days following the Preliminary Approval Date, Class Counsel will send the Class Notice (in a form approved by the Court) to Settlement Class Members' last-known addresses by first class mail and email, where available. Class Counsel will thereafter follow up promptly on undeliverable addresses and attempt to locate the Settlement Class Members' updated addresses through people-finder or an equivalent software program and skip trace searches through the United States Postal Service. Additionally, Class Counsel may call the telephone numbers of Settlement Class Members to attempt to obtain updated addresses, as necessary, and Defendant will cooperate in providing such numbers to the extent such numbers are available to it. In no event, and under no circumstances, shall Class Counsel contact any Settlement Class Member regarding, in any way, the prospective representation or potential representation of any Settlement Class Member relating to any of the Released Claims, except as specifically provided herein.

4.    Any Settlement Class Member wishing to be excluded from the Settlement must sign and post-mark or fax a written Opt-Out Request to Class Counsel no later than forty-five (45) days after the Class Notice is mailed by Class Counsel. This deadline applies notwithstanding any assertion of non-receipt of the respective notice of class settlement. The Opt-Out Request must include the following information: (1) the Settlement Class Member's name, address and telephone number; (2) a statement that the individual wishes to be excluded from the Settlement; and (3) a statement that the individual understands that he or she will not be eligible to receive any payment from this Settlement. Any Settlement Class Member who submits a valid and timely Opt-Out Request shall not be a member of the Settlement Class, shall be barred from participating in this Settlement, shall receive no monetary benefit from this Settlement, and shall not be subject to the releases and waivers in this Agreement including, but not limited to, the release in Section IV.

5.    Any Settlement Class Member who does not affirmatively make a Request for Exclusion by submitting a timely and valid Request for Exclusion will be bound by all of its terms, including those pertaining to the claims released in Section IV, as well as any Judgment that may be entered by the Court if it grants final approval of this Settlement.

6.    Any Settlement Class Member who wishes to object to the Settlement must file a written objection with the Court and serve copies on Class Counsel within forty-five (45) days of the mailing of the notice of class settlement. Class Counsel shall provide a copy to Defense Counsel and inform the Court of any timely filed objection. The Parties shall not solicit nor otherwise encourage, directly or indirectly, any objections to this Settlement.

7.    Prior to the final approval hearing, Class Counsel will submit a Motion for Final Approval of the Settlement in a form that the Parties have mutually agreed upon. At the hearing on the Motion for Final Approval of the Settlement, Class Representatives and Defendant shall jointly request the Court enter a final order certifying the Settlement Class for settlement purposes only, approve the Settlement as required by Federal Rule of Civil Procedure 23(e), and enter a final judgment of dismissal with prejudice of the Action consistent with the terms of the Settlement. Class Counsel and Defense Counsel shall submit to the Court such pleadings and/or evidence as may be required for the Court's determination and approval.

## VI. SETTLEMENT FUNDING AND DISTRIBUTION

1.  Within ten (10) days after the Effective Date, Defendant will deposit $2,900,000.00 with the Class Counsel to form the Settlement Fund. Class Counsel shall place the Settlement Fund in a segregated, interest-bearing trust account until all payments are made to the Class Representatives, Settlement Class Members, Class Counsel, and the agreed *cy pres* beneficiary, as required by this Agreement. The Parties agree, and Class Counsel shall warrant, that the funds deposited in this account shall constitute a qualifying, designated settlement fund pursuant to Section 468B of the Internal Revenue Code.

2.  The Settlement Class Members are settling for the Settlement Fund of $2,900,000.00, which will be allocated to pay the (a) Class Counsel Fees and Expenses, (b) Service Awards Payments; (c) Individual Settlement Amounts; and (d) the Cy Pres Award, if any.

3.  Class Counsel shall receive a distribution from the Settlement Fund for their fees and expenses in an amount approved by the Court, but not to exceed $996.666.67 (Nine Hundred Ninety-Six Thousand, Six Hundred Sixty-Six and 67/100 dollars).

4.  Class Counsel shall issue payment from the Settlement Fund to each of the Class Representatives a Service Award in an amount approved by the Court, but not to exceed $25,000.00 (twenty-five thousand and 00/100 dollars) for Justin Muniz and $20,000.00 (twenty thousand and 00/100 dollars) for each of the remaining Class Representatives within ten (10) days following the establishment of the Settlement Fund.

5.  The Net Settlement Fund shall be allocated to Settlement Class Members based on their Contract Weeks during the Class Period.

    a. Each Settlement Class Member's pro rata share of the Net Settlement Amount will be calculated based on the number of Contract Weeks attributed to each Settlement Class Member relative to the total number of Contract Weeks attributed to all Settlement Class Members in RXO LM's records.

    b. These payments shall be reported by Class Counsel on an IRS Form 1099.

    c. Class Counsel shall mail, by first-class U.S. mail, a check for the Individual Settlement Amount to each Settlement Class Member's last known address, no later than 10 (ten) days following establishment of the Settlement Fund. In the event that a Settlement Class Member is deceased, payment hall be made payable to the estate of that Settlement Class Member and delivered to the Settlement Class Member's successor in interest.

6.  Each Settlement Class Member must cash his or her Individual Settlement Amount check within 90 days after it is mailed to him or her. If a check is returned to Class Counsel, Class Counsel will make all reasonable efforts to re-mail it to the Settlement Class Member at his or her correct address. If any Settlement Class Member's Individual Settlement Amount check is not cashed within 90 days after it is mailed or re-mailed, whichever is later, the Class Counsel will send the Settlement Class Member a letter informing him or her that, unless the check is cashed within 30 days of the date of the letter, it will expire and become non-negotiable, and offering to replace the check if it was lost or misplaced, but not cashed. If the check remains uncashed at the expiration

of the 30-day period after this notice, Class Counsel will void the check. In such event, the Settlement Class Member will nevertheless remain bound by the Settlement, including the release of the Released Claims.

7. Within 150 days after Class Counsel mails the Individual Settlement Amount checks, Class Counsel shall distribute the amount of any uncashed checks or remaining funds to those Settlement Class Members who cashed their Individual Settlement Amount checks. The amount of uncashed checks or remaining funds shall be allocated according to the method used for calculation of the Individual Settlement Amounts. Class Counsel shall inform each of the Settlement Class Members receiving a second distribution that the check for any second distribution shall be cashed within 30 days or become void.

8. Within 180 days after Class Counsel mails the Individual Settlement Amount checks, Class Counsel shall distribute any uncashed checks or remaining funds on a *cy pres* basis to Greater Boston Legal Services.

9. The entirety of the Settlement Class Fund will be utilized to pay Settlement Class Members, the Class Representatives, Class Counsel Fees and Expenses, or the Cy Pres beneficiary according to the terms of this Settlement. The Parties agree that no amount of the Settlement Fund will revert back to Defendant once paid pursuant to this Settlement.

10. The Settlement Fund is a common fund that will be administered as a Qualified Settlement Fund for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and the "administrator" of the Settlement Fund, within the meaning of Treas. Reg. § 1.468B-2(k), shall comply with all applicable requirements, which shall include, without limitation, (a) preparing a "Regulation Section 1.468B-3 Statement" pursuant to Treas. Reg. § 1.468B-3(e) on behalf of Plaintiffs and Defendant and providing copies to Counsel for Plaintiff and Defendant for review and approval (which approval shall not be unreasonably withheld); and (b) preparing and timely filing on behalf of the Settlement Fund (i) such income tax and other returns and statements as are required to comply with Treas. Reg. § 1.468B-2 and the other applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code"), and (ii) all necessary state or local tax returns. In the event that any amounts to be distributed to the Settlement Class remain unpaid, that amount will be redistributed to the Settlement Class or to the Cy Pres beneficiary.

11. RXO LM shall have no responsibility for deciding the validity of the Individual Settlement Amounts or any other payments made pursuant to this Settlement, and shall not be liable under any circumstances for any errors in the administration of this Settlement, shall have no involvement in or responsibility for the determination or payment of taxes and required withholdings, if any, and shall have no liability for any errors made with respect to the calculation of any Individual Settlement Amount. Settlement Class Members represent and understand that they shall be solely responsible for any and all tax obligations associated with their respective Individual Settlement Amounts. All Individual Settlement Amounts shall be deemed to be paid to Settlement Class Members solely in the year in which such payments are actually received by the Settlement Class Members.

## VII. NULLIFICATION OF SETTLEMENT

1.  If (a) the Court does not, for any reason, approve this Agreement in the form agreed to by the Parties, or (b) the Court does not, for any reason, enter a judgment and dismissal with prejudice of the Action, or (c) the approval of the Settlement, judgment, or dismissal is reversed, modified or declared or rendered void, then the Agreement and conditional class certification shall be considered void, and neither the Agreement, conditional class certification, nor any of the related negotiations or proceedings, shall be of any force or effect, and all parties to the Agreement shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court. Notwithstanding the foregoing, the Parties may attempt in good faith to cure any perceived defects in the Agreement to facilitate Court approval.

2.  Invalidation of any material portion of the Settlement shall invalidate the Settlement in its entirety, unless the Parties shall subsequently agree in writing that the remaining provisions of the Settlement are to remain in full force and effect.

3.  In the event of a timely appeal from the approval of the Settlement, judgment and dismissal, the judgment shall be stayed, and Defendant shall not be obligated to fund the Settlement Class Fund or take any other actions required by this Settlement until all appeal rights have been exhausted by operation of law.

## VIII. CONFIDENTIALITY

1.  Class Counsel agrees (i) to hold the Settlement Class Member Information in strictest confidence; (ii) not to disclose or divulge the Settlement Class Member Information to any Settlement Class Member, including the Class Representatives, or to any third party except as otherwise required in this Agreement; and (iii) to use the Settlement Class Member Information exclusively for or to assist in administration of this Settlement and for no other purpose, including, but not limited to, fact-gathering, discovery, or communication with Settlement Class Members for any purpose other than administration of this Settlement.

## IX. DUTIES OF THE PARTIES

1.  The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Agreement. Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other actions as may reasonably be necessary to fulfill the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by court order or otherwise, to effectuate this Settlement and the terms set forth herein. As soon as practicable after execution of this Agreement, Class Counsel, with the cooperation of Defendant and Defense Counsel, shall take all necessary and reasonable steps to secure the Court's final approval of this Agreement.

2.  The Parties agree to abide by all of the terms of the Settlement in good faith and to support the Settlement fully and to use their best efforts to defend this Settlement from any legal challenge, whether by appeal or collateral attack.

3.  Class Counsel shall promptly submit this Agreement to the Court for preliminary approval and determination by the Court as to its fairness, adequacy, and reasonableness. Promptly upon

execution of this Agreement, Class Counsel shall apply to the Court for the entry of a preliminary order scheduling a hearing on the question of whether the proposed Settlement should be approved as fair, reasonable, and adequate as to the Settlement Class Members, approving as to form and content the proposed Class Notice as agreed to by the Parties, and directing the mailing of the Class Notice to Settlement Class Members. Defense Counsel shall not oppose the motion for preliminary approval or join in the motion, provided that after review, it does not oppose any of its terms.

4.  If it has not done so by the date this Agreement is executed, Defendant will promptly issue notice of this Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## X. MISCELLANEOUS

1.  The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions of this Agreement, and that the Class Representatives' signatures also bind any business entity through which the Class Representatives provided services for Defendant.

2.  The Parties hereto, and each of them, acknowledge that, except for matters expressly represented herein, the facts in relation to the dispute and all claims released by the terms of this Agreement may turn out to be other than or different from the facts now known by each Party and/or its counsel, or believed by such Party or counsel to be true, and each Party therefore expressly assumes the risk of the existence of different or presently unknown facts, and agrees that this Agreement shall be in all respects effective and binding despite such difference.

3.  The Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

4.  This Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior and contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

5.  The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Agreement.

6.  This Agreement may not be changed, altered, or modified, except in a writing signed by the Parties, and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

7.  Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission by any person or party that any person or entity who contracted with, or provided any delivery services for, Defendant is an employee or was improperly classified as an

independent contractor, or is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the Defendant Releasees. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. This Agreement is a settlement document and shall be inadmissible in evidence in any proceeding. The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this Agreement.

8.  This Agreement is entered into in accordance with the laws of the State of Massachusetts and shall be governed by and interpreted in accordance with those laws, excluding any choice of law provisions.

9.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

10. The Parties agree that any dispute regarding the interpretation of the terms of this Agreement shall be resolved by the Court. The Parties further agree that, upon the Final Approval Date, this Agreement shall be binding and enforceable pursuant to applicable law.

11. Except as otherwise specifically provided for herein, each party shall bear his or its own attorney fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other party to this Agreement.

12. This Agreement may be executed in counterparts with signatures transmitted by facsimile or electronic mail. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

IN WITNESS HEREOF, the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

**PLAINTIFFS:**

_____     Date: June__, 2024
Justin Muniz

                                                          19
_*Belaabd*_____     Date: June__, 2024
Mohammed Belaabd

_____     Date: June__, 2024
Nelson Quintanilla

13

_____     Date: June__, 2024
Jose Dilone


_____     Date: June__, 2024
Victor Amaro


**APPROVED AS TO FORM BY PLAINTIFFS' COUNSEL:**


                                                21
*HLL*_____     Date: June__, 2024
Harold Lichten
Attorney for Plaintiffs and Class Members


**DEFENDANT:**      _____     Date: June__, 2024
                    Jon Paul Anthony, V.P., Managing Attorney, Commercial & Litigation
                    RXO Last Mile, Inc.


**APPROVED AS TO FORM BY DEFENDANT'S COUNSEL:**


_____     Date: June__, 2024
JACKSON LEWIS P.C.
By Adam Lounsbury
Attorneys for Defendant RXO Last Mile, Inc., f/k/a XPO Last Mile, Inc.
.


14

independent contractor, or is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the Defendant Releasees. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. This Agreement is a settlement document and shall be inadmissible in evidence in any proceeding. The preceding sentence shall not apply to an action or proceeding to approve, interpret, or enforce this Agreement.

8.   This Agreement is entered into in accordance with the laws of the State of Massachusetts and shall be governed by and interpreted in accordance with those laws, excluding any choice of law provisions.

9.   Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

10. The Parties agree that any dispute regarding the interpretation of the terms of this Agreement shall be resolved by the Court. The Parties further agree that, upon the Final Approval Date, this Agreement shall be binding and enforceable pursuant to applicable law.

11. Except as otherwise specifically provided for herein, each party shall bear his or its own attorney fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other party to this Agreement.

12. This Agreement may be executed in counterparts with signatures transmitted by facsimile or electronic mail. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

IN WITNESS HEREOF, the Parties and their counsel have executed this Agreement on the date below their signatures or the signature of their representatives. The date of the Agreement shall be the date of the latest signature.

**PLAINTIFFS:**

*Justin Muniz*
_____          Date: June_11_, 2024
Justin Muniz

_____          Date: June__, 2024
Mohammed Belaabd

*Nelson Quintanilla*
_____          Date: June_07_, 2024
Nelson Quintanilla

13

_Jose Dilone_ (signature)

Date: June___, 2024 <sup>jd</sup>
_____
Jose Dilone

_Victor Amaro_ (signature)

Date: June___, 2024 <sup>17</sup>
_____
Victor Amaro

**APPROVED AS TO FORM BY PLAINTIFFS' COUNSEL:**

_____     Date: June___, 2024
Harold Lichten
Attorney for Plaintiffs and Class Members

**DEFENDANT:**     _____     Date: June___, 2024
Jon Paul Anthony, V.P., Managing Attorney, Commercial & Litigation
RXO Last Mile, Inc.

**APPROVED AS TO FORM BY DEFENDANT'S COUNSEL:**

_____     Date: June___, 2024
JACKSON LEWIS P.C.
By Adam Lounsbury
Attorneys for Defendant RXO Last Mile, Inc., f/k/a XPO Last Mile, Inc.
.

14

DocuSign Envelope ID: E54B3859-85C1-4DDC-8953-CC599C7B94C5

_____          Date: June___, 2024
Jose Dilone


_____          Date: June___, 2024
Victor Amaro


**APPROVED AS TO FORM BY PLAINTIFFS' COUNSEL:**


_____          Date: June___, 2024
Harold Lichten
Attorney for Plaintiffs and Class Members


**DEFENDANT:**    *Jon Anthony* _____    Date: June 14.00, 2024
Jon Paul Anthony, V.P., Managing Attorney, Commercial & Litigation
RXO Last Mile, Inc.


**APPROVED AS TO FORM BY DEFENDANT'S COUNSEL:**

*Adam Lounsbury* _____    Date: June 10.00, 2024
JACKSON LEWIS P.C.
By Adam Lounsbury
Attorneys for Defendant RXO Last Mile, Inc., f/k/a XPO Last Mile, Inc.
.

4868-5412-9350, v. 2

14