UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Central Division

_____

JUSTIN MUNIZ, MOHAMMED ) 
BELAABD, NELSON QUINTANILLA, )
JOSE DILONE, and VICTOR AMARO, )
on behalf of themselves and all others )
similarly situated, )
      )
Plaintiffs, )        Civil Action No. 4:18-cv-11905-MRG
      )
v. )
      )
RXO LAST MILE, INC., )
      )
Defendant. )
_____ )

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## I.    INTRODUCTION

Plaintiffs Justin Muniz, Mohammed Belaabd, Nelson Quintanilla, Jose Dilone and Victor Amaro brought this case in July 2018 against Defendant XPO Last Mile, Inc. (later renamed to RXO Last Mile, Inc.) ("RXO LM"), alleging that they were misclassified by RXO LM as independent contractors, and that the deductions taken by RXO LM from their pay violated the Massachusetts Wage Act, M.G.L. c. 149 § 148. Dkt. 1. The case was removed to federal court in September 2018. Id.

On January 14, 2022, Plaintiffs moved for class certification. Dkt. 113. The Court granted Plaintiffs' Motion for Class Certification in August 2022. Dkt. 147. On December 20, 2022, Plaintiffs moved for partial summary judgment on the issue of RXO LM's liability as an employer under Massachusetts' ABC test. Dkt. 161. The Court granted Plaintiffs' motion for summary

judgment on August 21, 2023. Dkt. 202. On September 28, 2023, RXO moved for summary judgment, seeking a determination that Plaintiffs were not entitled to recover the deductions taken from their pay. Dkt. 205. The Court denied Defendant's motion on December 22, 2023, and denied Defendant's request for interlocutory review on February 16, 2024. Dkt. 219. Defendant RXO has denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in this case. A trial on damages was set for June 24, 2024.  Dkt. 227.

On May 17, 2024, following a full-day mediation with Hunter Hughes, Esq., a nationally recognized class action wage and hour mediator, with significant experience mediating cases alleging independent contractor misclassification, the Parties reached a settlement in this case. Plaintiffs submitted a Motion for Preliminary Approval for the court's review on June 14, 2024 (Dkt. 233). On June 24, 2024, the Court granted Plaintiffs' motion and authorized distribution of the notice and claim forms with minor revisions. Dkt. 235.

Class Counsel then issued notice, by mail and email, to the 141 Settlement Class Members. Approximately 70 class members have already confirmed receipt of the Notice and confirmed their mailing addresses. No one has voiced concerns, objected to the settlement, or opted out of the settlement.  Class Counsel plan to make an initial distribution to all 141 Settlement Class Members by sending checks out by first class mail.  Class Counsel will continue to make follow-up calls and send emails to Settlement Class Members to remind them to cash their settlement checks, or to update their mailing address. Lichten Decl. ¶ 20. The settlement is non-reversionary, meaning that to the extent checks from the initial distribution remain uncashed, Class Counsel will make a

second distribution to those Settlement Class Members who cashed their checks in the first round. Dkt. 233.1, VI(9); Lichten Decl. ¶ 21.

The Settlement Class Members in this case will receive a substantial portion of their actual damages. The class members' *minimum* shares represent approximately 66% of their damages in this case. Lichten Decl. ¶ 12.[1] The largest share is in excess of $50,000.00 and the average share is in excess of $12,000.00. Id. As described herein, this settlement is a fair resolution of Plaintiffs' and Settlement Class Members' claims against RXO and Plaintiffs request that this Court approve the settlement pursuant to Fed. R. Civ. P. 23(e).

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiffs Justin Muniz, Mohammed Belaabd, Jose Dilone, Victor Amaro, and Nelson Quintanilla filed the instant case in July 2018, alleging that they were misclassified by RXO LM as independent contractors, and that the deductions taken by RXO LM from their pay violated the Massachusetts Wage Act, M.G.L. c. 149 § 148. Dkt. 1. The case was removed to federal court in September 2018. Id.

On January 14, 2022, Plaintiffs moved for class certification. Dkt. 113. The Court granted Plaintiffs' Motion for Class Certification in August 2022. Dkt. 147. The class definition ultimately adopted by the Court, and which is used to define the Settlement Class in this case, is as follows: any person who contracted with RXO LM to provide delivery services (either individually or through a business entity), who personally made deliveries at least 80 percent of the days RXO LM assigned routes to him for at least three months and who averaged performing deliveries for

---

[1] Since not all class members are expected to cash their settlement checks, it is likely that the Settlement Class Members who do will recover a much higher percentage of their actual damages.

RXO LM at least four days a week during that time span, who reported to a facility in Massachusetts more often than to a facility in any other state for at least four weeks during the class period OR who made at least 60% of his deliveries in Massachusetts for at least four weeks during the class period. Dkt. 199.

On December 20, 2022, Plaintiffs moved for partial summary judgment on the issue of RXO LM's liability as an employer under Massachusetts' ABC test. Dkt. 161. The Court granted Plaintiffs' motion for summary judgment on August 21, 2023. Dkt. 202. On September 28, 2023, RXO moved for summary judgment, seeking a determination that Plaintiffs were not entitled to recover the deductions taken from their pay. Dkt. 205. The Court denied Defendant's motion on December 22, 2023, and denied Defendant's request for interlocutory review on February 16, 2024. Dkt. 219. Trial was set for June 24, 2024. Dkt. 227.

On May 17, 2024, following a full-day mediation with Hunter Hughes, Esq., a nationally recognized class action wage and hour mediator, with significant experience mediating cases alleging independent contractor misclassification, the Parties reached a settlement in this case. This case involves solely claims for deductions under the Massachusetts Wage Act, M.G.L. c. 149 § 148. While Plaintiffs take the position that the deductions taken by RXO LM from class members' pay, particularly deductions for customer damage claims and insurance coverage, violate the Wage Act under Camara v. Atty. Gen., 458 Mass. 756, 763 (Mass. 2011) and Awuah v. Coverall N.A., Inc., 460 Mass. 484, 494-97 (Mass. 2011), the validity of the deductions in this case has been contested, and RXO has maintained that the deductions taken from class members' pay do not violate the Wage Act. The total deductions taken from Settlement Class Members' pay in this case are estimated at $ $2,733,603.47; the Net Settlement Amount represents approximately 66% of those deductions.

Plaintiffs submitted a Motion for Preliminary Approval for the court's review on June 14, 2024 (Dkt. 233). On June 24, 2024, the Court granted Plaintiffs' motion and authorized distribution of the notice and claim forms with minor revisions. Dkt. 235.

On June 25, 2024, Class Counsel issued notice by mail and email to the 141 Settlement Class Members. and by email to 141 class members. Lichten Decl. ¶ 14. The Notice contained instructions to fill out a Form W-9. Id. A total of six mailed notices were ultimately returned as undeliverable. Id. ¶ 15. Five of the email notices were undeliverable. Id. Class Counsel have received no objections and no requests for exclusion from the settlement. Id. ¶ 16.

As of August 9, 2024, Class Counsel had received completed W-9 forms for 59 class members. Lichten Decl. ¶ 17. In an effort to confirm contact information for a greater number of the class members, Class Counsel made approximately 77 follow-up calls and sent 11 follow-up emails to the class members in the weeks that followed. Id. ¶ 18. As a result of these efforts, as of September 4, 2024, 70 class members have responded with completed W-9 forms. Id. ¶ 19. In the weeks following issuance of the settlement checks, Class Counsel plan to place phone calls and emails to class members to ensure they have received their settlement checks, and to encourage them to reach out to other class members to obtain their up-to-date contact information. Id. ¶ 20

## III.    TERMS OF THE FINANCIAL SETTLEMENT

The total settlement amount is $2,900,000.00. Dkt. 233.1, I (29). Based upon the data provided by RXO LM, the Settlement Class has approximately 141 members and Class Counsel believe that the financial settlement will provide significant compensation to the Settlement Class Members for the alleged wrongs they have suffered. See Lichten Decl. ¶¶ 8-9; Dkt. 233.1, I (28).

The Parties propose that, if approved by the Court, the Settlement Class Fund of $2,900,000.00 shall be used to:

1.    Pay, if approved by this Court, service awards to the named Plaintiffs.

2.    Pay the claims of the class members who the Plaintiffs represent in accordance with Rule 23 of the Federal Rules of Civil Procedure.

3.    Pay attorneys' fees and costs in the amount of one-third of the total recovery, with Class Counsel being responsible for paying the substantial costs to administer and pay out the Settlement Fund.

## IV.    <u>DISTRIBUTION OF THE SETTLEMENT FUNDS</u>

Each Settlement Class Member will, in the initial distribution, receive an amount equal to 100% of his or her settlement share, which is based on the number of workweeks meeting the class definition that individual had, relative to the total number of workweeks attributed to all Settlement Class Members according to RXO's records. Dkt. 233.1, VI (5). Class Counsel believe this formula, which will provide those class members who performed the most work for RXO LM with the highest shares is fair and reasonable. As stated before, after fees and expenses, each Settlement Class Member will receive at least 66% of his or her estimated actual damages. Lichten Decl. ¶ 12.

For the second distribution, if any, each Settlement Class Member will receive a share of the remaining funds based on his share relative to other claiming class members. Dkt. 233.1, VI (7). To the extent any funds remain unclaimed after the second distribution, these will go to the cy pres beneficiary, Greater Boston Legal Services. <u>Id.</u> at VI (8).

**V.    THE CLASS RECEIVED THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES OF THE PROPOSED SETTLEMENT.**

**B.    Notice to the Class was More than Adequate.**

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent Class Members receive the "best notice practicable under the circumstances." In re Volkswagen & Audi Warranty Extension Litig., 273 F.R.D. 349, 355 (D. Mass. 2011). Notice should be "reasonably calculated to reach the absent class members." Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004).[2] "Rule 23 does not require the parties to exhaust every conceivable method of identifying the individual class members." In re Prudential Ins. Co. of Am. Sales Practices Litig., 177 F.R.D. 216, 232 (D.N.J. 1997) (citing Weinberger v. Kendrick, 698 F.2d 61, 71 (2d Cir.1982) (rejecting the contention that the mailing of individual notice to the last known address of all class members was inadequate), cert. denied, 464 U.S. 818 (1983). Indeed, it is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23.[3]

In this case, Class Counsel have provided notice to Settlement Class Members both by first class mail and by email, with only a handful of the Notices coming back as undeliverable. Lichten Decl. ¶¶ 14-15. Class Counsel also sent follow-up emails and made phone calls to Settlement Class Members, to ensure they have received the Notice. Id. at ¶ 18. As a result of these efforts Class Counsel have obtained responses – in the form of completed W-9 forms – from half of the

---

[2] See also Serio v. Wachovia Sec., LLC, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y.2008)) ("[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as Plaintiffs' Counsel acted reasonably in choosing the means likely to inform potential class members.").

[3] See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173–77 (1974); Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985); Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249-50 (E.D. Pa 2003) (notices mailed to class members' last known address held reasonable and adequate).

Settlement Class Members. Id. at ¶ 19. Given Class Counsel's substantial efforts to ensure notice of the class action settlement was actually received by as many class members as possible, in light of the high rate of responses and the absence of any opt-outs or objections, the dissemination of the notice here was more than adequate.

## V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THEREFORE, SHOULD BE APPROVED.

### A.    The Legal Standard for Final Settlement Approval.

It is well-established that "the law favors class action settlements." In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) (citation omitted); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged"). Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."   The decision of whether to approve a proposed settlement is left to the discretion of this Court. In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32 (1st Cir. 2009).

"The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'"   Bezdek v. Vibram USA, Inc., 809 F.3d 78, 82 (1st Cir. 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir.2009)). Generally, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable."   Id. (quoting In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32–33 (1st Cir.2009)). See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st

Cir. 1996) ("when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement"); Rowland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000) ("strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms'-length negotiations, that the proponents' counsel have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small").

In determining the fairness of a settlement, many courts in the First Circuit have relied on factors such as:

> (1) [the] risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *5 (D. Mass. Sept. 8, 2014) (quoting In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F.Supp.2d 259, 259–60 (D.N.H.2007)).

**B.    The Proposed Settlement Satisfies the Requirements for Final Approval.**

As demonstrated herein, the settlement satisfies the criteria for final approval. Although Plaintiffs believe that they have strong and meritorious claims, several concerns have led Class Counsel to conclude that a settlement have led Class Counsel to conclude that a settlement with RXO LM is preferable to proceeding to trial. Not only would a trial on damages, along with subsequent appellate proceedings, have been costly and time consuming, but the amount of deductions which Plaintiffs and Class Members would ultimately recover at trial is uncertain. Moreover, RXO LM has continued to maintain, throughout the course of this litigation, that the classification of the Settlement Class Members was consistent with Massachusetts law, and that

any deductions made form Settlement Class Members' pay did not violate the Massachusetts Wage Act, setting the stage for a lengthy appeal process post-trial.

Based on these considerations, Class Counsel strongly believe that the settlement negotiated in this case is fair, reasonable, adequate and most importantly, is in the best interest of the class. In reaching this conclusion, Class Counsel have spent many hours performing calculations and compiling spreadsheets leading up to mediation. Lichten Decl. ¶ 10. As set out above, the Net Settlement Amount represents 66% of the Settlement Class Members' damages in this case. Id. ¶ 12. The largest settlement share is $52,306.81, and the average settlement share is $12,966.90. Id. ¶ 13.

### 1. The Settlement Negotiations Occurred at Arm's Length.

The procedural background of this matter supports a finding that the Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages to Settlement Class Members. The case presented numerous and vigorously contested issues related to the classification of the Settlement Class Members and whether certain legal defenses provided RXO LM with a complete or partial defense to liability.  The Parties have briefed, and obtained rulings on, a motion for class certification and two rounds of summary judgment briefs. They have engaged in a full-day mediation with a respected mediator and conducted extensive formal discovery, including lengthy written discovery and multiple depositions. Furthermore, the settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and damages.  Such arm's length negotiations between capable and experienced counsel is entitled to a presumption of fairness, reasonableness, and adequacy.  Rolland v. Cellucci, 191 F.R.D. 3, 6 (D. Mass 2000).

2.      **Comparison of the Proposed Settlement with the Likely Result of Continued Litigation Favors Final Approval.**

"In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff after full and successful litigation of the claim. Nor should the court consider cases of particular individual class members to determine whether each and every member of the class receives the fullest possible compensation." Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 68 (D. Mass. 1997). See also In re Celexa & Lexapro Mktg. & Sales Practices Litig., 2014 WL 4446464, at *7 ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair."); O'Brien v. Brain Research Labs, LLC, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012) ("When evaluating the fairness of settlements, courts have held that full compensation is not a prerequisite for a fair settlement."). Yet, Class Counsel estimate that the settlement covers a significant portion of the class members' recoverable damages in this case. Class Counsel estimate that the total single damages recoverable in this action are approximately $2,733,603.47. A settlement of $2,900,000.00 constitutes an excellent recovery for Plaintiffs, especially in light of the risks to Plaintiffs' case as explained below. Moreover, the Settlement Class Members will receive $1,828,333.33, which represents 66% percent of the class's recoverable damages in this case. Lichten Decl. ¶ 12.

Even where the plaintiffs' claims are relatively strong, a settlement's fairness increases when the recovery of the class members will be substantial. "It must also be remembered that 'a dollar today is worth a great deal more than a dollar ten years from now.'" Schulte, 805 F. Supp. 2d at 583 (quoting Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 284 (7th Cir. 2002)). As discussed above, the average *minimum* share Settlement Class Members is in excess of $12,000.00

while the largest minimum share is in excess of $50,000.00. The fact that Settlement Class Members are receiving such substantial payments weighs heavily in favor of granting settlement approval.

### 3. There Has Been No Opposition to the Settlement.

The "reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citing Sala v. National R.R. Passenger Corp., 721 F.Supp. 80, 83 (E.D.Pa.1989)). "In fact, the lack of objections may well evidence the fairness of the Settlement." Id. (citing In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 126 (S.D.N.Y.); Schwartz v. Novo Indus. A/S, 119 F.R.D. 359, 363 (S.D.N.Y.1988)).

Class Counsel have received **no** objections from the class and **no** opt-outs. This factor strongly favors final approval here. See In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"); cf. The Authors Guild, et al. v. Google, Inc., 770 F.Supp.2d 666, 676 (S.D.N.Y.2011) (denying approval of Google's class action, in part because "an extremely high number of class members— some 6,800—opted out" and because "the objections [were] great in number").

### 4. The Stage of Litigation and Completion of Discovery Strongly Favor Final Approval.

This factor determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 325 (7th Cir.1980). Discovery is sufficient if it allows a court to "intelligently make . . . an appraisal of the Settlement." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quotation marks omitted). the Parties have conducted extensive discovery on the

merits and on damages, exchanging thousands of pages of documents and large data files, and conducting seven depositions, and performed extensive data analysis and calculations which allowed Plaintiffs to establish a clear basis for assessing deductions made from Settlement Class Members' pay and to estimate their damages in this case. This is "sufficient" to determine the fairness and adequacy of settlement at this stage.  In re M3 Power Razor, 270 F.R.D. 4563 (D. Mass. 2010) (finding discovery sufficient where defendant produced 100,000 documents and pertinent financial information).

Furthermore, the stage of the proceedings supports settlement approval. The Parties have already briefed class certification and summary judgment in this case. Plaintiffs' victories at these critical junctures have provided the impetus for settlement discussions among the Parties and have helped Plaintiffs achieve an extremely favorable settlement. Class Counsel, and the Court, are thus able to fully evaluate the merits of the claims brought here.

**5.      The Proponents of the Settlement Are Highly Experienced in Similar Litigation.**

Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and is a recognized expert in labor and employment law in Massachusetts. See Ex. 2 ¶¶ 2, 4-7. Class Counsel are also uniquely experienced in wage and hour class action litigation on behalf of delivery drivers like Plaintiffs. In addition to this case, Harold Lichten and Benjamin Weber of Lichten & Liss-Riordan, P.C. have successfully represented couriers and delivery drivers

in a number of wage-and-hour class actions.[4] See, e.g., Portillo v. Nat'l Freight, Inc., 606 F. Supp. 3d 72 (D.N.J. 2022) (holding on summary judgment that defendants misclassified a class of delivery drivers under the NJWPL's ABC test); Carrow v. FedEx Ground Package System, Inc., No. 16-3026 (D.N.J.), Dkt 161 (approving class action settlement on behalf of FedEx drivers who asserted claims under New Jersey wage laws); DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 405 (D. Mass. 2017) (granting class certification in truck driver misclassification case and stating of Attorneys Lichten and Weber: ""[t]he plaintiffs' attorneys are highly experienced in class-action employment litigation and specifically in Wage Act misclassification claims"); Badia v. HomeDeliveryLink, Inc., 2015 WL 5666077, at *8 (D.N.J. Sept. 25, 2015).

Mr. Lichten's firm is likewise experienced in the mechanics of class settlement administration. In the dozens of other cases the firm has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds. Class Counsel's opinion that the proposed settlement is fair and reasonable under the circumstances should, therefore, be accorded considerable weight.

---

[4] See also Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (representing class of misclassified delivery drivers); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013) (representing class of misclassified cable installers seeking unpaid wages); Hager v. OmniCare, Inc., No. 5:19-cv-00484, Dkt. 124 (S.D.W.V. Nov. 15, 2021); Taveras v. XPO Logistics, Inc., No. 3:15-cv-01550, Dkt. 123 (D. Conn. Aug. 11, 2017); Brandon v. 3PD, Inc., No. 13-3745, Dkt. 151 (N.D. Ill. Jan. 26, 2016); Martins v. 3PD, Inc., 2014 WL 1271761 (D. Mass. Mar. 27, 2014); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009) (landmark decision of the Massachusetts Supreme Judicial Court on independent contractor misclassification); Oliveira v. Advanced Delivery Systems, Inc., C.A. No. 09-1311 (Mass. Super. Ct. 2009); Sherman v. American Eagle Express, Inc., d/b/a AEX Group, C.A. No. 2:09-00575-JS; (E.D. Pa. 2009); Fucci v. Eastern Connection Operating, Inc., C.A. No. 2008-2659 (Mass. Super. Ct. 2008).

## VI.    THE PROPOSED SERVICE AWARDS ARE FAIR AND REASONABLE

The settlement proposes service awards of $25,000.00 for Plaintiff Justin Munz and $20,000.00 each for Plaintiffs Mohammed Belaabd, Jose Dilone, Victor Amaro and Nelson Quintanilla. Ex. 1, VI(4).  The proposed service awards are fair and reasonable, given that Plaintiffs initiated the lawsuit, and it was through their initiative that this recovery was obtained.  Plaintiffs have provided invaluable assistance to Class Counsel over the course of this litigation, including providing documents, responding to discovery, and submitting to depositions. Lichten Decl. ¶ 23.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003); see also Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments). As Judge Hornby recognized, awards in employment cases were generally higher than in other types of cases and recent awards averaged around $15,000, but could reach $30,000 and higher. Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079m at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir.1998) ($25,000 incentive award approved for one named plaintiff; total settlement was for $14 million plus structural changes to the pension fund)); see also In re Janney Montgomery Scott LLC Fin. Consultant Litig.,

2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA)).[5]

## VII.    PLAINTIFFS' FEE REQUEST IS REASONABLE AND SHOULD BE GRANTED

### A. Class Counsel Performed Significant Work to Bring this Case to a Successful Resolution

Class Counsel seek fees and costs in the amount of $966,666.67 (33 percent of the gross settlement amount). This fee was agreed to by the parties. Moreover, Class Counsel took this case on a contingency-fee basis, where the Plaintiffs agreed to pay a one-third fee, thus risking the possibility that they would have recover no fees. The requested fee will cover all costs incurred to date by Class Counsel, as well as the significant costs Class Counsel will incur in the next several months, administering the settlement fund, updating settlement share distributions, taking care of all mailings, and fielding inquiries from Settlement Class Members. See Lichten Decl. ¶¶ 25-28, 31. To date, Class Counsel have paid for the costs associated with numerous depositions, half of the mediation fees, and fees related to filing and investigating this case. Id. ¶ 30. Class Counsel's ability to administer the class settlement without hiring a class action settlement administrator will

---

[5] One of the reasons for finding higher incentive payment in employment cases, including wage and hour cases, is the issue of retaliation. See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, inter alia, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes enhancement payments even more crucial in employment class action settlements. As one court has observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

result in a substantial savings, which can then be more properly used to pay distribution shares to Settlement Class Members.

Class Counsel have devoted significant time and resources to this case over the past six years, and have achieved an extremely favorable settlement for the class. Class Counsel have spent a combined total of approximately 810 hours on this litigation, for a collective lodestar of $486,000.00. Lichten Decl. ¶ 29. Class Counsel have also incurred costs in the amount of $27,845.59 to date in prosecuting this case. Id. ¶ 30. Class Counsel have successfully briefed, among others, a Motion for Class Certification and a Motion for Summary Judgment as to employment status, and have defeated RXO's Motion for Summary Judgment on the legality of the deductions taken from Plaintiffs' and class members' pay. Id. ¶ 26. Class Counsel also reviewed thousands of pages of documents and extensive spreadsheets produced by RXO as part of the class certification process and summary judgment briefing in this case, and have prepared a detailed damages analysis in advance of mediation. Id. ¶ 27. Class Counsel have prepared and answered written discovery; prepared for and attended a number of depositions; and prepared for and participated in a full-day mediation session. Id. ¶ 28.

### 18. Plaintiffs' Fee Request is Reasonable under the Percentage of the Fund Approach

Courts generally favor awarding fees from a common fund based upon a percentage of the fund. As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fee from the fund as a whole . . . jurisdiction over the fund involved in the litigation allows the Court to prevent . . . inequity by assessing attorneys' fees against the entire fund thus spreading fees proportionally among those benefited by the suit.

Belling Company v. Van Gemert, 444 U.S. 472, 478 (1980). Assessing attorneys' fees as a percentage of the common fund is favored over the lodestar method because it prevents creating an incentive for attorneys to needlessly spend as many hours as possible on the litigation, encourages capable plaintiffs' attorneys to litigate complex, risky cases and is easier to administer.[6] The percentage of the fund approach "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." In re Thirteen Appeals, 56 F.3d at 308.

While the First Circuit has not articulated a specific set of factors to use in determining the reasonableness of a percentage-of-the-fund award, courts in this District have applied the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

In re Lupron Mktg. and Sales Practices Litig., 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005); see also Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237, 255–256 (1985); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir.2000).

An analysis of the factors listed above demonstrates that the award sought by Class Counsel is reasonable. Class Counsel seek an award of attorneys' fees and costs in the amount of

---

[6] See In re Puerto Rican Cabotage Antitrust Litig., 815 F. Supp. 2d 448, 458 (D.P.R. 2011); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 265 (D.N.H. 2007); In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 307 (1st Cir. 1995).

$966,666.67, which represents one-third of the total settlement amount. Class Counsel are highly knowledgeable and experienced in the area of class and collective action litigation, and have significant expertise in the area of misclassification. See Lichten Decl. ¶¶ 4-7. Attorney Harold Lichten has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and is a recognized expert in labor and employment law in Massachusetts.[7] Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., is a pioneer in the field of worker misclassification and has litigated and settled dozens of class action cases filed in the federal courts. See Lichten Decl. at ¶ 6. Class Counsel are thus leaders in this area of the law, and their experience has provided the Plaintiffs with a high degree of expertise, which contributed to a favorable resolution of their claims.

While Class Counsel are confident in the strength of Plaintiffs' claims, this litigation presented significant risks and obstacles. Among these, Plaintiffs had to prove that RXO LM was, in fact, their employer – a proposition which RXO LM has vigorously contested. Plaintiffs also had to successfully prove that they and other delivery drivers were subject to unlawful deductions which violated the Massachusetts Wage Act – an issue which was hotly contested and which was the subject of extensive briefing. In sum, this case presented several big hurdles to Plaintiffs' recovery, which make the settlement in this case an excellent outcome for the class of delivery drivers.

Further, a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable. See, e.g., Scovil, No. 10-CV-515, Docket No. 287 (Order at p. 13-14)

---

[7] Among other things, Mr. Lichten successfully argued the landmark case on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009).

(awarding attorneys' fee of one-third of the settlement amount for a fee of $1.9 million); Matamoros v. Starbucks, C.A. No. 08-10772-NMG (Docket Nos. 159,169 (D. Mass. filed May 7, 2008) (approving one-third fee for settlement of claims under Massachusetts wage law); Crenshaw v. Texas Roadhouse,, Inc., et al., C.A. No. 11-10549-JLT (D. Mass. filed April 5, 2011 (Docket Nos. 53, 56) (same); Cutter v. HealthMarkets, Inc., et al., C.A. No. 10-11488-JLT (D. Mass. filed July 2, 2010) (settlement of claims for unlawful misclassification and denial of wages under Massachusetts law); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570-WGY (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); In re Copley Pharm., Inc. Sec. Litig., Civ. A. No. 94-11897-WGY (D. Mass. 1996) (awarding one-third of a $6.3 million settlement fund); In re Picturetel Corporation Sec. Litig., Civ. A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); Zeid v. Open Environment Corp., Civ. A. No. 96-12466-EFH (D. Mass. 1999) (awarding a fee of one-third of a $6 million settlement). Given this precedent, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable.

## VII.  **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant final approval of this proposed settlement, enter the proposed order submitted herewith, and allow Plaintiffs to distribute the settlement as described herein.

Respectfully submitted,

JUSTIN MUNIZ, MOHAMMED
BELAABD, NELSON QUINTANILLA,
JOSE DILONE, and VICTOR AMARO, on
behalf of themselves and all others similarly
situated,

By their attorneys,

/s/Harold Lichten
Harold L. Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

Date: September 6, 2024

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2024, a copy of this document was served by electronic filing on all counsel of record.

 /s/Harold Lichten
Harold Lichten